## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| v. | ) | **No. 06 CR 763** |
| | ) | |
| **NORTON HELTON, CHARLES** | ) | |
| **WHITE, and FELICIA FORD,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendants' post-trial motions. For the reasons stated below, we deny the motions in their entirety.

## BACKGROUND

On June 7, 2010, a jury trial commenced in the instant action against Defendant Norton Helton (Helton), Defendant Charles White (White), and Defendant Felicia Ford (Ford). On July 9, 2010, the jury returned a verdict finding Helton guilty on Counts Six through Seventeen. The jury also returned a verdict finding White guilty on Counts One through Seven. The jury further returned a verdict finding Ford guilty on Counts One, Two, Three, Five, and Seven, and not-

guilty on Counts Four and Six. Helton has filed a motion for judgment of acquittal

or, in the alternative, for a new trial. White has filed a motion for a new trial. Ford

has filed a motion for judgment of acquittal, a motion for an arrest of judgment, and a

motion for a new trial.


## LEGAL STANDARD

A defendant in a criminal case who has been found guilty by a jury may move

for a judgment of acquittal under Federal Rule of Criminal Procedure 29(c) (Rule

29(c)). Fed. R. Crim. P. 29(c). If the defendant is challenging the sufficiency of the

evidence presented at trial, the court must "consider the evidence in the light most

favorable to the prosecution, drawing all reasonable inferences in the government's

favor," and a "[r]eversal is appropriate only when, after viewing the evidence in such

a manner, no rational jury 'could have found the defendant to have committed the

essential elements of the crime.'" *United States v. Macari*, 453 F.3d 926, 936 (7th

Cir. 2006)(quoting *United States v. Masten,* 170 F.3d 790, 794 (7th Cir. 1999)); *see

also United States v. Moses*, 513 F.3d 727, 733 (7th Cir. 2008)(stating that "[a]

district court should grant a motion for a judgment of acquittal only when there is

insufficient evidence to sustain a conviction"); *United States v. Pree*, 408 F.3d 855,

865 (7th Cir. 2005)(stating that a motion for acquittal should be granted "only if,

viewing the evidence in the light most favorable to the Government, no rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt"); *United States v. Gougis*, 432 F.3d 735, 743-44 (7th Cir. 2005)(stating that a defendant who challenges the sufficiency of the evidence "faces a nearly insurmountable hurdle")(citation omitted).

A court may provide a defendant found guilty of a crime by a jury with a new trial under Federal Rule of Criminal Procedure 33(a) (Rule 33(a)) "if the interest of justice so requires." Fed. R. Crim. P. 33(a). The decision of whether a new trial is warranted is "committed 'to the sound discretion of the trial judge.'" *United States v. Gillaum*, 372 F.3d 848, 857-58 (7th Cir. 2004)(quoting *United States v. Woolfolk,* 197 F.3d 900, 904 (7th Cir.1999)). In determining whether to grant a new trial, a court should exercise "great caution" and be "wary of second guessing the determinations of the . . . jury." *Id.* (internal quotations omitted)(quoting *United States v. DePriest*, 6 F.3d 1201, 1216 (7th Cir. 1993)); *see also United States v. Van Eyl*, 468 F.3d 428, 436 (7th Cir. 2006)(stating that "[a] defendant is entitled to a new trial if there is a reasonable possibility that a trial error had a prejudicial effect upon the jury's verdict").

Pursuant to Federal Rule of Criminal Procedure 34 (Rule 34), "[u]pon the defendant's motion or on its own, the court must arrest judgment if: (1) the

indictment or information does not charge an offense; or (2) the court does not have jurisdiction of the charged offense." Fed. R. Crim. P. 34(a); *see also United States v. Boender*, 2010 WL 2523420, at *2 (N.D. Ill. 2010)(stating that Rule 34 "provides that the court must arrest judgment if 'the indictment or information does not charge an offense'" and "[t]hus, the rule raises a pure question of law distinct from the evidence adduced at trial")(quoting in part *United States v. McLemore*, 815 F.Supp. 432, 433 n.3 (S.D. Ala. 1993)).

## DISCUSSION

I.  Helton's Post-Trial Motions

Helton moves for a judgment of acquittal pursuant to Rule 29(c) and moves in the alternative for a new trial pursuant to Rule 33(a). Helton contends that he is entitled to a judgment of acquittal or, in the alternative, at least to a new trial because: (1) the court declined to sever Helton's trial from White's trial, (2) the court declined to adopt Ford's proposed jury instructions regarding multi-conspiracies and a variance, (3) the court allowed the Government to introduce evidence of Helton's misrepresentations to the bankruptcy court and his efforts to conceal his legal fees, (4) the court allowed the Government to introduce evidence relating to a 1997 bankruptcy petition personally filed by Helton (Bankruptcy Petition), (5) the court

denied Helton's motion to dismiss Counts I-XI of the initial indictment on collateral estoppel grounds, (6) the court denied Helton's motion to bar the testimony of Charlene Hall (Hall), (7) the court allowed Timothy Daniel (Daniel) and other Eyes Have Not Seen (EHNS) employees to testify, and (8) there was insufficient evidence to convict Helton on any count.

A. Severance

Helton contends that the court erred in denying his motion to sever his trial from White's trial. Helton presents the same arguments regarding severance that were already presented to the court prior to trial and were rejected by the court. Helton again argues that a joint trial prevented him from calling White as a witness because White would have invoked his Fifth Amendment rights and would therefore have refused to provide exculpatory evidence in support of Helton. However, as pointed out by the Government, if White intended to invoke his Fifth Amendment right against self-incrimination, that right could have been asserted in a severed trial as well as in a joint trial. Helton also asserts that a joint trial deprived him of the opportunity to present his preferred defense. However, Helton has not provided details concerning the defense he would have proffered and regardless, "severance is not required even if the defenses [are] mutually antagonistic." *United States v.*

*Carrillo*, 435 F.3d 767, 778 (7th Cir. 2006); *See also Zafiro v. United States*, 506 U.S. 534, 537 (1993)(stating that "[t]here is a preference in the federal system for joint trials of defendants who are indicted together").  There has not been a showing by Helton that he was unduly prejudiced by the joinder of his trial with White's trial or that Helton was denied a fair trial in a joint trial.  *See, e.g., United States v. Calabrese*, 572 F.3d 362, 367-68 (7th Cir. 2009)(stating that a "defendant must be able to show that the denial of severance caused him actual prejudice in that it prevented him from receiving a fair trial; it is not enough that separate trials may have provided him a better opportunity for an acquittal")(internal quotations omitted); *United States v. Warner*, 498 F.3d 666, 700 (7th Cir. 2007)(stating that Federal Rule of Criminal Procedure 8 has been construed "'broadly to allow liberal joinder in order to enhance judicial efficiency'")(quoting *United States v. Stillo,* 57 F.3d 553, 556 (7th Cir. 1995)).  There has been no showing by Helton that the defenses of his co-Defendants were antagonistic to his defense or that Helton's trial with his co-Defendants caused him any prejudice that would warrant a judgment of acquittal or new trial.  The court also notes that during most of the trial, Helton adopted the defense strategy of his co-defendants.


B.  Instruction on Multi-Conspiracies and Variance

Helton contends that the court erred by refusing to adopt Ford's proposed jury instructions regarding multi-conspiracies and a variance. The instructions proposed by Ford were not accurate statements of the law and were not applicable in the instant action. The indictment in this case charged Defendants with a single conspiracy. In order to ensure fairness to Defendants, the court gave a properly modified version of the multiplicity instruction approved in *United States v. Mansoori*, 304 F.3d 635, 643 (7th Cir. 2002). The Court also properly instructed the jury as to the unanimity requirement in accordance with *United States v. Davis*, 471 F.3d 783, 791 (7th Cir. 2006). Such instructions properly addressed the concerns expressed by Ford in seeking the introduction of her proposed instructions as to multiple conspiracies and a variance, and Helton has not shown that the court erred in declining to adopt Ford's proposed instructions.

## C. Misrepresentations to Bankruptcy Court and Concealment of Fees

Helton argues that the court erred in allowing the Government to introduce evidence of Helton's misrepresentations to the bankruptcy court and his efforts to conceal his legal fees. Pursuant to Rule 404(b), "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith," but such evidence may "be admissible for other purposes,

such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . ." Fed. R. Evid. 404(b). In determining whether to admit Rule 404(b) evidence, a court must consider whether "(1) the evidence is directed toward establishing a matter in issue other than the defendant's propensity to commit the crime charged; (2) the evidence shows that the other act is similar enough and close enough in time to be relevant to the matter in issue; (3) the evidence is sufficient to support a jury finding that the defendant committed the similar act; and (4) the evidence has probative value that is not substantially outweighed by the danger of unfair prejudice." *United States v. Diekhoff*, 535 F.3d 611, 617 (7th Cir. 2008)(quoting *United States v. Simpson,* 479 F.3d 492, 498 (7th Cir. 2007)).

In the instant action, evidence that Helton made misrepresentations to a bankruptcy court was admissible as evidence of Helton's effort to conceal the conduct charged in this case. Such evidence was also admissible under Rule 404(b) since it showed Helton's knowledge of misrepresentations and omissions in the bankruptcy petitions in question and his knowledge of EHNS's alleged illegal activities. Evidence that Helton attempted to conceal his legal fees was admissible since it was directly connected to the charged conduct in this case. Such concealed fees were also an additional means by which Helton could gain funds from the

fraudulent scheme and conceal the gain from illegal activity relating to the charged offense. Such evidence was also admissible under Rule 404(b) to show Helton's efforts to conceal evidence of the fraudulent scheme and to negate any conclusion that Helton's failure to properly disclose fees was due to a misunderstanding or oversight. Helton has not shown that evidence of Helton's misrepresentations to the bankruptcy court and his efforts to conceal his legal fees was overly prejudicial and should have been excluded under Federal Rule of Evidence 403. Nor has Helton shown that the court erred in allowing the Government to introduce such evidence.

### D.  Bankruptcy Petition

Helton argues that the court erred in allowing the Government to cross-examine Helton relating to the Bankruptcy Petition, which Helton had personally filed. Helton argues that such evidence constitutes other bad acts evidence under Rule 404(b). At trial, the Government attempted to elicit testimony from Helton showing that Helton had failed to disclose his largest unsecured debt in the Bankruptcy Petition. Such evidence was admissible because Helton chose to testify at trial and, pursuant to Federal Rule of Evidence 608(b), for witnesses, specific instances of conduct can be inquired into if they are probative of truthfulness. Fed. R. Evid. 608(b). In addition, the evidence was admissible under Rule 404(b) to show

the absence of a mistake or accident in regard to Helton's charged conduct in this case and to show Helton's motive, intent, and modus operandi.  Thus, Helton has not shown that the court erred in permitting the Government to cross-examine Helton relating to the Bankruptcy Petition.

### E.  Denial of Collateral Estoppel Motion to Dismiss

Helton argues that the court erred when the court denied Helton's motion to dismiss Counts I-XI of the initial indictment on collateral estoppel grounds.  Helton contends that the issues raised in such Counts have been fully litigated in a federal bankruptcy court and that the judgments of that court were binding.

The Seventh Circuit has indicated that nonmutual collateral estoppel should not be applied in the criminal context.  *See United States v. Lahey*, 55 F.3d 1289, 1296 (7th Cir. 1995)(indicating that "nonmutual offensive collateral estoppel cannot be applied against the government in criminal cases").  Helton was not a party in the bankruptcy proceedings in which he represented clients.  In addition, the Government was not a party in the bankruptcy proceedings.  Thus, the doctrine of collateral estoppel is not applicable in this case since it would involve nonmutual collateral estoppel in a criminal action.

The issues presented in the instant criminal action were also not presented in

the bankruptcy proceedings. The main focus in the bankruptcy proceedings was to assess whether the bankruptcy petitioners were insolvent, and to oversee an equitable distribution of the remaining assets. Helton has not shown that the issue of whether he committed fraud in preparing the petitions was ever addressed in the bankruptcy proceedings or that the bankruptcy court ever addressed whether Helton purposefully attempted to deceive his clients' debtors or creditors. The doctrine of collateral estoppel is not appropriately invoked in this case since the precise issues presented in this case were not actually litigated in the bankruptcy proceedings. Helton has not shown that the court erred in denying his motion to dismiss Counts I-XI of the initial indictment on collateral estoppel grounds.

### F.  Testimony of Charlene Hall

Helton argues that the court erred in denying Helton's motion to bar the testimony of Hall. Helton contends that the court should not have permitted Hall to testify as to certain matters such as that Hall witnessed Helton using Helena Wilson's notary stamp without her permission or knowledge. Helton fails to provide anything other than a conclusory statement that the court erred in regards to Hall's testimony. (Helton Mot. 9). Hall's testimony was admissible to show Helton's intent to mislead the bankruptcy court and to show that his false representations were not due to a

misunderstanding or mistake.  Therefore, Helton has failed to show that the court erred in permitting Hall's testimony.

### G.  Testimony of Timothy Daniel and other EHNS Employees

Helton contends that the court erred in allowing Daniel and other EHNS employees to testify.  Helton contends that such testimony was not admissible as admissions of co-conspirators.  Daniel's testimony was admissible to show the nature and operation of the EHNS conspiracy and Helton's participation in that conspiracy. The testimony of other EHNS employees was also admissible since Helton was a participant in the same overall EHNS conspiracy.  Therefore, Helton has not shown that the court erred in allowing Daniel and other EHNS employees to testify.

### H.  Sufficiency of Evidence

Helton argues that this court should overturn the jury's verdict, contending that there was insufficient evidence to convict Helton on any count.  Although Helton states that there was not sufficient evidence on any count, he presents specific arguments only in regard to the wire fraud counts.  Helton argues that he was not personally involved in all parts of the scheme.  However, in order to convict Helton, the Government was not required to show that he knew of or participated in every

facet of the scheme.  Nor was the Government required to show that Helton personally used interstate wires in regard to the offense.  The Government needed only to show that the use of interstate wires would occur in the ordinary course of business and would further the scheme.  *See, e.g., United States v. Powell*, 576 F.3d 482, 493 (7th Cir. 2009)(stating that "[t]he defendant himself need not personally cause the mailing or use of the wire; it is enough that the use of mail or wire 'will follow in the ordinary course of business, or where such use can reasonably be foreseen, even though not actually intended'")(quoting *Pereira v. United States*, 347 U.S. 1, 8–9 (1954)).  Helton has failed to show that there was insufficient evidence to convict him on any count.  Based on the above, Helton has not shown that he is entitled to a judgment of acquittal or that the interest of justice warrants providing Helton with a new trial.  Therefore, Helton's motion for judgment of acquittal and motion for a new trial are denied.


## II.  White's Post-Trial Motions

White moves for a new trial pursuant to Rule 33(a).  White's counsel who represented him at trial filed a motion for a new trial, and White's subsequent and current counsel adopted the prior filing and included additional arguments in a supplemental brief.

A.  Ostrich Instruction

White argues that the court erred in giving the ostrich instruction to the jury in

this case.  Seventh Circuit Pattern Criminal Federal Jury Instruction 4.06, which is

commonly referred to as the ostrich instruction, provides in part the following:

> Knowledge may be proved by the defendant's conduct, and by all the facts and
> circumstances surrounding the case.  You may infer knowledge from a
> combination of suspicion and indifference to the truth.  If you find that a
> person had a strong suspicion that things were not what they seemed or that
> someone had withheld some important facts, yet shut his eyes for fear of what
> he would learn, you may conclude that he acted knowingly, as I have used that
> word.  You may not conclude that the defendant had knowledge if he was
> merely negligent in not discovering the truth.

Instruction 4.06, *Seventh Circuit Pattern Criminal Federal Jury Instructions*.  The

Seventh Circuit has held that "if a defendant claims a lack of guilty knowledge,"

despite the defendant's contention, the defendant's knowledge can be inferred if "the

evidence supports an inference of deliberate avoidance. . . ."  *United States v. Leahy*,

464 F.3d 773, 796 (7th Cir. 2006); *United States v. Ciesiolka*, 614 F.3d 347, 351 (7th

Cir. 2010).  Deliberate avoidance occurs when "a defendant deliberately avoid[s]

acquiring knowledge of the crime being committed by cutting off his curiosity

through an effort of the will."  *Leahy*, 464 F.3d at 796.  A defendant is not guilty of

deliberate avoidance if the defendant is merely negligent in failing to discover the

truth. *United States v. Tanner*, 628 F.3d 890, 904-05 (7th Cir. 2010).

White contends that there was no evidence in this case showing that he suspected any wrongdoing or ever took any action to avoid learning the truth. White also contends that the ostrich instruction was inappropriate since the Government had attempted to show that White had actual knowledge of the wrongdoing in question. However, at trial, White attempted to show that he lacked actual knowledge of wrongdoing since he was often absent from the EHNS office and was busy working with his music production business. White attempted to show that wrongdoing was done by EHNS employees without his knowledge. The ostrich instruction was appropriate since the Government introduced evidence to show that, even if White lacked actual knowledge as to wrongdoing done by EHNS employees, he consciously avoided such knowledge. In regard to the Government's attempt to show actual knowledge, the Government can premise a charge on both actual knowledge and conscious avoidance of knowledge. *See, e.g., United States v. Ramirez*, 574 F.3d 869, 879 (7th Cir. 2009). Therefore, White has not shown that the court erred in giving the jury the ostrich instruction.


### B. Foundation Objection

White argues that the court improperly allowed witnesses to testify as to vague

hearsay testimony without giving a proper foundation. White fails to specifically identify any testimony at trial and provides only vague references to testimony at trial. White has failed to show that the court erred in regard to the necessity of a proper foundation for any testimony at trial.


### C.  Severance

White argues that the court erred in declining to sever his case from Helton's case. As explained above, the court properly declined to sever Helton's case from White's case. White argues that statements made by Helton's counsel during closing arguments, attempting to distance Helton from White, prejudiced White. However, White has not shown that such statements caused any actual prejudice to White. There has been no showing by White that the defenses of his co-Defendants were antagonistic to his defense or that White's joint trial with his co-Defendants caused him any prejudice that would warrant a judgment of acquittal or a new trial. As the court noted earlier, for most of the trial the co-defendants adopted the same trial strategy and presented an almost unified defense.


### D.  Voir Dire Procedure

White argues that the court erred in not instructing, questioning, or

admonishing potential jurors during the voir dire procedure about a defendant's right not to testify, right to call any witnesses in his defense, and right to rely on the Government's inability to find him guilty beyond a reasonable doubt, as well as a variety of other general legal principles. White also contends that the voir dire should have included questions concerning prospective jurors' feelings regarding the legal principles identified by White. White was given an opportunity to participate in the preparation of the voir dire questions, and after the finalization of the voir dire questions, White was given an opportunity to ask followup questions to prospective jurors, if needed. In fact, White's counsel asked several followup questions. The court properly instructed the jury as to the legal principles once the jury was chosen by the parties, and White has not shown that the court was required to instruct prospective jurors as to legal principles White advocates in his brief. The court instructed the jury that the Defendants were all presumed innocent, that the presumption of innocence continued throughout the trial, including during the jury deliberations process, and that the burden was on the Government to prove a defendant's guilt by evidence beyond a reasonable doubt. The court also instructed the jury that the Defendant was not required to present any defense. The court further instructed the jury that a defendant has an absolute right not to testify and the fact that a defendant did not testify should not be considered by the jury in any way

in arriving at its verdict. White was provided with ample information to assess the qualifications of the prospective jurors. The court also asked the prospective jurors a catchall question if there was anything that would impair their ability to impartially act as jurors. Thus, White has not shown that voir dire questions were improper. White has not shown that the court did not properly instruct the jury. White has not shown that he was denied a fair trial by the voir dire process or the jury instructions.

E. Exhibit 20908

White argues that the court erred in admitting "Exhibit 20900 (et seq.)" into evidence. (White Mot2. 3). Based on the arguments presented by White, it appears that White is objecting to the admission of Government Exhibit 20908, which was a summary exhibit reflecting transactions that met certain criteria consistent with the EHNS mortgage bailout program. White argues that Exhibit 20908 was misleading and inaccurate. However, White has not shown that any aspect of the exhibit contained inaccurate information. Nor has White shown that the jurors were misled or confused by the exhibit. White was also allowed to cross-examine witnesses concerning the exhibit and to advance any arguments if White believed that the exhibit contained inaccurate or irrelevant information. Exhibit 20908 was appropriately admitted as a compilation of information derived from voluminous

documents, that were themselves admitted into evidence.  Thus, White has not shown that the court erred in admitting Exhibit 20908.

F.  Instruction on Multi-Conspiracies

White argues that the instruction given by the court regarding multiple conspiracies was erroneous.  As explained above, in regard to Helton's post-trial motions, the court's multiple conspiracies instruction given by the court to the jury was consistent with Seventh Circuit precedent.  White has not provided any additional arguments that show that the court erred in its jury instruction on multiple conspiracies.

G.  Sufficiency of Evidence

White argues that this court should overturn the jury's verdict, contending that there was insufficient evidence to convict White.  White argues that certain Government witnesses' testimony lacked credibility.  (White Mot2. 5).  However, the jury is the arbiter of the credibility of witnesses, and a jury's decision to credit testimony should not be overturned unless the testimony is incredible as a matter of law.  *See United States v. Galati*, 230 F.3d 254, 258 (7th Cir. 2000)(stating that "[i]n assessing the sufficiency of the evidence, the court will not re-weigh the evidence or

judge the credibility of witnesses"). White has not shown that the witnesses' testimony was incredible as a matter of law. White also argues that the victims in this case managed to avoid foreclosure and ultimately obtained what they had wanted. There was ample evidence at trial showing that White was responsible for fraudulently procuring mortgage financing for EHNS's investors. White was not excused from his misconduct simply because borrowers signed the fraudulent loan applications that he authored or because investors knowingly or unknowingly endorsed White's lies. To the extent that White argues that he did not know that the information in question was false, there was ample evidence at trial from which a jury could conclude otherwise. White has not shown that there was insufficient evidence to convict him as to any count. Therefore, White has not shown that the interest of justice warrants providing White with a new trial and White's motion for a new trial is denied.


## III.  Ford's Post-Trial Motions

Ford moves for a judgment of acquittal pursuant to Rule 29(c) for an arrest of judgment pursuant to Rule 34, and for a new trial pursuant to Rule 33(a).


### A.  Motion for Judgment of Acquittal

Ford argues that once the funds in question were transferred, the scheme to defraud was complete, and what others did with such funds afterwards was not an essential part of the scheme to defraud. Ford contends that the majority of her conduct in this case occurred after the relevant wire transfers. However, the Government was not required to show that Ford's conduct occurred prior to the wire transfers. The Government was only required to show that Ford participated in the scheme and knew that the use of wire communication would occur in the ordinary course of business. *See, e.g., Powell*, 576 F.3d at 493. There was sufficient evidence presented at trial to establish both propositions. There was also sufficient evidence presented at trial to establish Ford's knowing participation in the fraudulent scheme, and that she was a necessary component to the success of the scheme. Ford has not shown that she is entitled to a judgment of acquittal and Ford's motion for judgment of acquittal is denied.


B.  Motion for Arrest of Judgment

Ford moves for an arrest of judgment pursuant to Rule 34. Ford contends that the "indictment" in this case does not state facts sufficient to constitute the commission of a crime or public offense against the laws of the United States. Although Ford refers only vaguely to the "indictment," it appears that she is referring

to the final indictment, which was the Fourth Superseding Indictment (Indictment). Ford contends that the Indictment is vague, indefinite, and ambiguous, and does not sufficiently set forth the conduct constituting the alleged offenses to apprise Ford of the offenses for which she was charged. Ford also contends that the Indictment is not sufficiently concrete in form or substance. The Indictment sets forth all of the necessary elements of the crime for which Ford was charged, and Ford has not pointed to any specific aspect of the Indictment that was vague, indefinite, or ambiguous. Ford also presented the same arguments to the court in her motion to dismiss a prior indictment and the court denied the motion. Ford has not presented any new arguments or evidence to the court. Ford has not shown that an arrest of judgment is warranted, and therefore, Ford's motion for arrest of judgment is denied.

C.  Motion for a New Trial

Ford requests that the court overturn the jury's verdict and provide her with a new trial.

1.  Multiple Conspiracies Instruction

Ford contends that the court erred in instructing the jury as to multiple conspiracies.  However, as explained above, the court's multiple conspiracies

instruction was consistent with Seventh Circuit precedent such as *Mansoori*, 304

F.3d 635 and *Davis*, 471 F.3d 783. Ford has not provided any additional arguments

that show that the court erred in its multiple conspiracies jury instruction.


### 2. Evidence of Good Character

Ford also contends that the court erred in barring her from presenting evidence

of her good character. Federal Rule of Evidence 405 (Rule 405) provides the

following:

> (a) Reputation or opinion. In all cases in which evidence of character or a trait
> of character of a person is admissible, proof may be made by testimony as to
> reputation or by testimony in the form of an opinion. On cross-examination,
> inquiry is allowable into relevant specific instances of conduct.
>
> (b) Specific instances of conduct. In cases in which character or a trait of
> character of a person is an essential element of a charge, claim, or defense,
> proof may also be made of specific instances of that person's conduct.


Fed. R. Evid. 405. Ford sought to offer evidence of specific instances of prior

conduct to prove her conformity with such prior conduct. Ford has not shown that

any evidence of her good character could have been presented under Rule 405, and

has not shown any valid basis for the admittance of evidence of her good character

under Rule 405(a) or (b). Nor did Ford seek at trial to offer reputation or opinion

testimony as permitted under Rule 405. Ford has not shown that the court erred in

barring her from presenting evidence of her good character.

### 3.  Consistency of Jury's Verdict

Ford also argues that the jury's verdict was inconsistent.  Ford contends that this case involved one overarching scheme and thus, because she was acquitted on two of the seven wire fraud counts brought against her, the jury's verdict was inconsistent.  Even though the counts all related to a single fraudulent scheme, there was different evidence presented as to each of the real estate transactions involved. The court instructed the jury to consider each Count separately based on the evidence.  Ford has not shown any inconsistencies in the jury's verdict that would warrant a new trial based on the fact that the jury found Ford guilty only on some of the counts brought against her.

### 4.  Denial of Motion to Dismiss

Ford also argues that the court erred in denying her motion to dismiss Counts One through Seven of the Third Superseding Indictment and incorporated through oral motion with regard to the Fourth Superseding Indictment.  Ford has not shown that the court erred in denying her motions to dismiss and she has not presented any new arguments that would warrant a reconsideration of the court's prior rulings.

5.  Severance

Ford also contends that the court erred in denying her motion to sever Counts One through Seven of the Indictment, or in the alternative, to sever Ford's case from Helton's case.  However, Ford has not shown any actual prejudice to her as a result of a joint trial, and Ford has not shown that she was denied a fair trial at the joint trial.  Based on the above, Ford's motion for a new trial is denied.


## CONCLUSION

Based on the foregoing analysis, Defendants' post-trial motions are denied in their entirety.




_____
Samuel Der-Yeghiayan
United States District Court Judge


Dated:  July 8, 2011